FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 20, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CRYSTAL S.,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | NO:  1:19-CV-03258-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 12 and 16.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree.  The Defendant is represented by Special Assistant United States Attorney Jordan D. Goddard.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 12, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 16.

**JURISDICTION**

ORDER ~ 1

1    Plaintiff Crystal S. protectively filed for supplemental security income on

2    July 18, 2007, alleging an onset date of June 30, 2006.  Tr. 68-72.  Benefits were

3    denied initially, Tr. 26-29, and upon reconsideration, Tr. 33-35.  Plaintiff appeared

4    at a hearing before an administrative law judge (ALJ) on August 7, 2009.  Tr. 16-

5    23.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ

6    denied benefits, Tr. 6-15, and the Appeals Council denied review.  Tr. 1.  On June

7    22, 2012, the United States District Court for the Eastern District of Washington

8    granted Plaintiff's Motion for Summary Judgment, and remanded the case for

9    further proceedings.  Tr. 442-51.  On August 28, 2012, the Appeals Council

10   vacated the ALJ's finding, and remanded for further administrative proceedings.

11   Tr. 452-55.  On October 10, 2013, Plaintiff appeared for an additional hearing

12   before the ALJ.  Tr. 358-82.  The ALJ denied benefits.  Tr. 456-75.  On November

13   27, 2015, the Appeals Council remanded the case for further administrative

14   proceedings.  Tr. 476-80.  On March 3, 2016, Plaintiff appeared for an additional

15   hearing before the ALJ.  Tr. 383-403.  The ALJ denied benefits.  Tr. 481-97.  On

16   September 8, 2017, the Appeals Council remanded the case for further

17   administrative proceedings.  Tr. 498-502.  On July 9, 2019, Plaintiff appeared for

18   an additional hearing before the ALJ.  Tr. 404-426.  The ALJ denied benefits.  Tr.

19   324-349.  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

20                                          **BACKGROUND**

21

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 29 years old at the time of the first hearing, 33 years old at the time of the second hearing, 35 years old at the time of the third hearing, and 39 years old at the time of the fourth hearing. Tr. 19, 363, 388, 408. She testified that she "made it to the ninth grade but [she] didn't complete [it]," and was in special education classes. Tr. 19, 392. She lived with her husband and three children. Tr. 364. Plaintiff testified in 2013 that she took care of her household, and had not worked outside of the home at any job. Tr. 365-66, 388, 421. Plaintiff testified that she could not work for eight hours a day, five days a week, because of back pain and her need to lie down throughout the day. Tr. 389-90, 416.

Plaintiff testified that she had "bulging discs" and two failed back surgeries. Tr. 20, 362-63. She reported that her legs tingle, her legs go numb and fall asleep, she falls about three times a month, she has to change positions every half hour to an hour because her back starts hurting, she can stand for 20 minutes on a bad day before she has to sit or lay down, she can walk a block on a "good day," and she has to lay down for half an hour to an hour once or twice a day. Tr. 20-21, 371, 388, 411-12. In 2019, Plaintiff testified that she was diagnosed with Graves' disease, and had recurrent cysts in her breast. Tr. 416-18.

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

ORDER ~ 4

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

ORDER ~ 5

this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER ~ 6

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 18, 2007, the application date.  Tr. 329.  At step two, the ALJ found Plaintiff has the following severe impairments: spinal impairment(s) (status/post spinal surgeries), thyroid disorder(s), obesity, learning disorder(s), and borderline intellectual functioning.  Tr. 330.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 331.  The ALJ then found that Plaintiff has the RFC

ORDER ~ 7

to perform sedentary work as defined in 20 CFR 416.967(a) except she can alternate between sitting and standing at will, provided she is not off-task more than ten percent of her work shifts.  She cannot climb ladders, rope, or scaffolding.  She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs.  She can occasionally reach overhead bilaterally, and can frequently reach in other directions bilaterally.  She cannot have exposure to excessive vibration.  She cannot have exposure to unprotected heights, nor can she use hazardous or unshielded machinery.  She can understand, remember, and carry out simple routine instructions and tasks, consistent with a specific vocational preparation (SVP) of one or two.  She should not have strict production quotas, but instead her work should emphasize per shift production rather than per hour production.

Tr. 333.  At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 341.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: telephone quotation clerk, charge account clerk, and addresser.  Tr. 342.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 18, 2007, the date the application was filed.  Tr. 342.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 12.  Plaintiff raises the following issues for this Court's review:[1]

---

[1] Defendant correctly notes that Plaintiff "alleged disability from back/leg pain, a thyroid disorder, and mental issues," but she "appears to challenge only the ALJ's consideration of her back pain complaints."  ECF No. 16 at 3 n.1.  However, as

ORDER ~ 8

1.  Whether the ALJ properly weighed the medical opinion evidence;

2.  Whether the ALJ improperly discredited Plaintiff's symptom claims; and

3.  Whether the ALJ erred at step five.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial

_____

discussed herein, the Court finds that remand is necessary based solely on the ALJ's errors in considering Plaintiff's symptom claims and the medical opinion evidence regarding her back pain.

ORDER ~ 9

evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

(9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues that the ALJ erroneously considered the opinions of treating

physician Peter Harveson, M.D. and reviewing physician Anthony Francis, M.D.

ECF No. 12 at 13-16.

### 1.  Peter Harveson, M.D.

In August 2009, Plaintiff's treating physician, Dr. Peter Harveson, opined

that due to her herniated lumbar disc and recurrent back pain even after two back

surgeries, Plaintiff would need to lie down for 30 minutes a day twice a day, and

she would be absent from work four or more days per month if she attempted to

work a forty-hour per week schedule.  Tr. 320-21.  In September 2013, Dr.

Harveson opined that Plaintiff had "failed back syndrome," her prognosis was

poor, and it was more probable than not that she would miss some work due to

medical impairments if she attempted to work a 40-hour per week schedule.  Tr.

720-21.  The ALJ gave minimal weight to Dr. Halverson's opinions because his

"contemporaneous comments and treatment recommendation indicate he was

equivocal about his own opinions of disability," and this

> equivocation and conservative treatment recommendations undermine Dr.
> Halverson's opinions of limitations in the claimant's ability to perform
> competitive employment, which otherwise appear to have been based on the

ORDER ~ 10

claimant's direct statements about the effects of her pain symptoms and learning disorder.  For various reasons already discussed in this decision, these self-reports are not reliable.

Tr. 339.

First, an ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes.  See *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Rollins*, 261 F.3d at 856 (affirming ALJ's rejection of provider's opinion of total disability where the same doctor "prescribed a conservative course of treatment").  In support of this finding, the ALJ notes that Dr. Harveson indicated that Plaintiff "'is in the process of filing for social security disability, and she may qualify on the basis of mixed diagnoses.'  However, his only treatment recommendation for her combination of impairments was to proceed with back exercises and other exercise." [2] Tr. 322, 339.  The ALJ

---

[2] Defendant contends that it was proper for the ALJ to discount Dr. Harveson's opinion as "equivocal" because he opined that Plaintiff "may qualify" for "disability benefits."  ECF No. 16 at 10-11.  However, as discussed in detail above, a plain reading of the ALJ's decision indicates that the "equivocation" referenced by the ALJ was an alleged inconsistency between Dr. Harveson's statement that Plaintiff "may" qualify for benefits, and his "conservative" treatment recommendations.  Tr. 339.  Moreover, even assuming, *arguendo*, that the ALJ rejected Dr. Harveson's opinion for this reason, as noted by Plaintiff, the

ORDER ~ 11

1    additionally noted that the only treatment recommended by Dr. Harveson in

2    September 2013 was a new medication for Plaintiff's depression and pain

3    management.  Tr. 339, 722-23.

4         Plaintiff argues the ALJ's reasoning was improper because (1) Plaintiff had

5    no health insurance in 2009, and therefore Dr. Harveson limited his

6    recommendations in 2009 to "her available options given her financial situation,"

7    and (2) Dr. Harveson's 2013 recommendations were "consistent with [Plaintiff's]

8    failed attempts at physical therapy and steroid injections, two failed back surgeries,

9    and her specialist's recommendation against more surgery or injections."  ECF No.

10   12 at 14-15 (citing Tr. 322, 723).  The Court agrees.  The treatment note attached

11   to Dr. Harveson's 2009 opinion specifically indicates that Plaintiff had no medical

12   insurance at the time and could not afford massage therapy or physical therapy to

13   address her "chronic, recurring back pain."  Tr. 322.  In light of Plaintiff's limited

14   resources, Dr. Harveson continued her medication, gave her low back exercises,

15   _____

16   regulations are clear that the Commissioner is "responsible for making the

17   determination or decision about whether you met the statutory definition of

18   disability .... A statement by a medical source that you are 'disabled' or 'unable to

19   work' does not mean that we will determine that you are disabled." 20 C.F.R. §§

20   404.1527(d), 416.927(d); *see also* §§ 404.1527(e)(3), 416.927(e) (3) ("[w]e will

21   not give any special significance to the source of an opinion on issues reserved to

     the Commissioner.").

     ORDER ~ 12

1   and encouraged her to walk as much as possible.  Tr. 322.  Additionally, the ALJ

2   correctly noted that Dr. Harveson recommended a new medication in 2013 "for

3   both depression and pain management"; however, the ALJ failed to acknowledge

4   that Dr. Harveson simultaneously noted that this medication would be "tried" only

5   if Plaintiff's "insurance will cover it," and he "would consider repeating her MRI,

6   but in actuality, [he is] not sure that [he] would recommend any further surgery

7   anyway."  Tr. 723.  Further, as noted by Plaintiff, Dr. Harveson's more

8   conservative treatment recommendations are consistent with Plaintiff's two failed

9   attempts at physical therapy, and her treating providers' recommendation that she

10  should not pursue further surgery or steroid injections.  ECF No. 12 at 14-15; Tr.

11  278-80, 723, 839-43.

12       Finally, based on the limited evidence cited by the ALJ, it is unclear to the

13  Court that the "conservative treatment" recommended by Dr. Harveson was

14  effective in managing Plaintiff's symptoms.  Treatment notes at the time of Dr.

15  Harveson's opinions indicate that despite two previous back surgeries, Plaintiff had

16  tingling in her left leg, pain in her right leg, could only "be up" a few hours a day,

17  had to rest for 30 minutes twice a day, had "significantly" positive straight leg raise

18  on the right, had limited and painful range of motion in her back and "significant"

19  amount of paralumbar spasm, and MRI results from 2011 indicated "recurrent disc

20  or scar tissue at L5-S1 and a small annular tear at L4-5.  Tr. 322, 722-23.  Based on

21  the foregoing, the Court finds the ALJ's rejection of Dr. Harveson's treating

    opinions because they were undermined by his "equivocation" and "conservative

treatment recommendations" is not specific, legitimate, and supported by substantial evidence.

Second, the ALJ noted that Dr. Harveson's opinions "appear to have been based on [Plaintiff's] direct statements about the effects of her pain symptoms and learning disorder. For various reasons already discussed in the decision, these self-reports are not reliable." Tr. 339. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti*, 533 F.3d at 1041. In support of this finding, the ALJ generally cites treatment notes attached to Dr. Harveson's respective opinions that note Plaintiff's subjective complaints of tingling in her left leg, pain in her right leg, numbness in her legs, falling due to weakness in her legs, and laying down to rest for 30 minutes two or three times a day Tr. 322, 722. However, the ALJ fails to consider the entirety of Dr. Harveson's treatment notes, which included consistent objective findings of positive straight leg test on the right, limited range of motion and pain on back examination, "significant amount of paralumbar spasm," and assessments of "chronic, recurring back pain" and "failed back syndrome. Tr. 322, 723. Dr. Harveson also referenced Plaintiff's two previous back surgeries, and cited MRI results of her lumbar spine indicating a recurrent disc or scar tissue at L5-S1 and a small annular tear at L4-5. Tr. 723. Neither the ALJ, nor the Defendant, offers any evidence that Dr. Harveson relied "to a large extent" on Plaintiff's subjective complaints as opposed to these clinical findings. Moreover, as discussed below, the ALJ improperly rejected Plaintiff's

ORDER ~ 14

symptom claims.  For these reasons, this was not a specific and legitimate reason, supported by substantial evidence, to reject Dr. Harveson's opinions.

Based on the foregoing, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject Dr. Harveson's treating opinions.[3]

**B. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

_____

[3] Plaintiff also argues the ALJ erred in rejecting the opinion of consulting physician Dr. Anthony Francis.  ECF No. 12 at 15-16.  Dr. Francis generally opined that Plaintiff equaled Listing 1.04A for partial radiculopathy, and Listing 1.04B for arachnoiditis, since 2006.  Tr. 751.  The ALJ gave this opinion minimal weight because it was "contradictory to the medical evidence."  Tr. 339.  In light of the Court's finding that the ALJ's errors in considering Dr. Harveson's opinions and Plaintiff's symptom claims necessitates remand for immediate award of benefits, it is unnecessary to consider whether the ALJ erred in rejecting Dr. Francis's opinion that Plaintiff equaled Listings at step three.

required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 334-35.

ORDER ~ 16

First, the ALJ found Plaintiff's while Plaintiff's medical evidence "is consistent with significant spinal issues approximate to her application date in mid-2007," her symptom claims are "inconsistent with her minimal pursuit of treatment." Tr. 335. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). In support of this finding, the ALJ cites evidence including: a gap in treatment between Plaintiff's first surgery in "early" 2006, and the reoccurrence of pack pain in June 2007; a gap in treatment between her second surgery in April 2008, and a reoccurrence of back pain in July 2009 when she told a treatment provider that she awoke in pain three weeks earlier after being "pain free for quite some time"; early 2011 reports that she continued to have back and leg pain, but later in 2011 she reported her back pain "was doing relatively well" and she had "moderate improvement" from medication and physical therapy; limited treatment between "unsuccessful epidural injections" in "late" 2011 and Dr. Harveson's examination in September 2013 indicating that Plaintiff had positive right straight leg test and limited range of motion; Plaintiff's reports in 2013 that pain medications worked "ok"; and treatment notes for "various ailments" between 2014 to 2017 indicating that her back pain was "stable," she was "managing pain on her own" with medication, and she had "adequate" control of "chronic" back pain using prescribed pain

1    medication.  Tr. 335-37 (citing Tr. 186, 198, 278, 317, 736, 839-43, 893-96, 961-

2    65, 974-76, 981-82, 1008-10, 1025, 1028).

3        Plaintiff argues this is not a clear and convincing reason to reject Plaintiff's

4    symptom claims.  ECF No. 12 at 10-12.  The Court agrees.  Pursuant to Social

5    Security Ruling 16-3p, an ALJ "will not find an individual's symptoms

6    inconsistent with the evidence in the record on this basis without considering

7    possible reasons he or she may not comply with treatment or seek treatment

8    consistent with the degree of his or her complaints."  Social Security Ruling

9    ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.  For

10   instance, "although a conservative course of treatment can undermine allegations

11   of debilitating pain, such fact is not a proper basis for rejecting [Plaintiff's

12   symptom claims] where the [Plaintiff] has a good reason for not seeking more

13   aggressive treatment."  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155,

14   1162 (9th Cir. 2008).  Here, as noted by Plaintiff, the ALJ failed to consider that

15   Plaintiff did pursue aggressive treatment during the relevant adjudicatory period,

16   including two unsuccessful back surgeries, unsuccessful attempts to treat her pain

17   with physical therapy, unsuccessful epidural injections, and ongoing treatment with

18   a variety of medications.  Tr. 186, 278, 290, 317, 322, 723, 839-41.

19       Defendant argues that despite "some" aggressive treatment, "Plaintiff's later

20   treatment history and apparent disinterest in pursuing other treatment options

21   available to her implies that her more aggressive treatment early in the alleged

     period was more successful than she acknowledged."  ECF No. 16 at 7-8.

ORDER ~ 18

However, this argument appears to be based on a single treatment note indicating that Plaintiff declined referral to a pain clinic because she was "managing pain on her own," and fails to consider that after more aggressive "treatments failed to relieve her symptoms, [Plaintiff] was advised against further surgery and told that further spinal injections were not expected to improve her symptoms." ECF No. 12 at 11. Moreover, Plaintiff's treating physician diagnosed her with "failed back syndrome" and noted that her prognosis was "poor"; and the longitudinal record is replete with diagnoses of chronic and recurrent back pain. *See, e.g.*, Tr. 322, 720-21, 893. Thus, the Court finds the ALJ failed to properly consider whether Plaintiff's long history of failed "aggressive" treatment, and advice from treating physicians that those treatments were not expected to be successful in the future, was a good reason for any alleged failure to seek treatment.

Similarly, as noted by Plaintiff, "for at least part of the period in question, [Plaintiff's] pursuit of treatment was also limited by her lack of insurance, a fact which was noted by the doctor but the ALJ failed to address." ECF No. 12 at 11 (citing Tr. 322). "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Defendant generally notes that Plaintiff "regained" her insurance by 2013, and her "lapse in insurance coverage for a small amount of time does not explain her lack of more aggressive treatment throughout the relevant period." ECF No. 16 at 7. This argument is inapposite. Plaintiff applied for disability benefits in 2007, and underwent a substantial amount of

ORDER ~ 19

treatment between 2007 and "regaining" insurance in 2013.  Thus, the ALJ erred by failing to at least consider whether lack of insurance was a good reason for Plaintiff's alleged failure to seek treatment for the timeframe she was without insurance.

As a final matter, the ALJ cited evidence of Plaintiff's "non-compliance" with an agreement to receive controlled pain medication.  Tr. 336.  Specifically, Plaintiff agreed in 2012 to "abstain from marijuana while on a contract to receive prescription opiates from Dr. Harveson, with the understanding this contract would be broken with future marijuana use."  Tr. 336, 853.  Plaintiff acknowledged that she violated the pain contract, and testified that marijuana was more successful at treating her pain than opiates.  ECF No. 12 at 12 (citing Tr. 415).  It was reasonable for the ALJ to rely on evidence that Plaintiff was non-compliant with her pain contract; however, the Court finds this single piece of evidence does not rise to the level of substantial evidence to support rejecting Plaintiff's ongoing symptom claims over the course of the 13 year longitudinal record.  Moreover, as discussed in detail above, the ALJ failed to consider several possible reasons that Plaintiff did not seek treatment during the relevant adjudicatory period.  Thus, the ALJ's finding that Plaintiff pursued "minimal treatment," and failed to comply with treatment, was not a specific, clear, and convincing reason to reject Plaintiff's symptom claims.

Second, the ALJ summarily noted that Plaintiff's "activities" indicate her back pain is "well-managed with minimal treatment, contrary to her hearing

ORDER ~ 20

testimony." Tr. 337. Even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. However, Plaintiff need not be utterly incapacitated in order to be eligible for benefits. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities ... does not in any way detract from her credibility as to her overall disability."). Moreover, in evaluating Plaintiff's symptom claims, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting that a summary of medical evidence "is not the same as providing clear and convincing reasons").

Here, as noted by Plaintiff, the ALJ did not support this finding with specific reference to Plaintiff's symptom claims, or any evidence undermining those claims, aside from brief references in the ALJ's summary of the medical evidence to Plaintiff's single report of gardening, and another report of doing household chores. Tr. 336-37 (citing Tr. 977, 1003). It is unclear to the Court how these sporadic reports of physical activities are inconsistent with Plaintiff's own testimony that she was able to walk half a mile when her back pain was not flaring, she could garden for 20 minutes at a time, and could do household chores with breaks. ECF No. 12 at 12-13 (citing Tr. 410-413). Defendant cites evidence of

ORDER ~ 21

activities elsewhere in the record, however, the Court is not permitted to consider reasoning that was not offered by the ALJ in the decision. ECF No. 16 at 8-9; *Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").  Thus, the ALJ's general statement that Plaintiff's activities are inconsistent with the treatment record and Plaintiff's hearing testimony, is not a clear and convincing reason, supported by substantial evidence, for the ALJ to reject Plaintiff's symptom claims.

Third, and finally, the ALJ noted that Plaintiff's symptom claims are inconsistent with the longitudinal examination findings, which "indicate her spinal pain/impairment has been adequately controlled with minimal treatment."  Tr. 335. Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  However, an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601 (9th Cir. 1989).  Here, the ALJ set out, in detail, the examination findings purporting to contradict Plaintiff's claims of disabling physical limitations, including: normal gait and stance, ability to heel walk and toe walk, normal reflexes, normal range of motion in her extremities, full strength in extremities, unremarkable posture, intact sensation in both feet, and

ORDER ~ 22

lack of neurological deficits.  Tr. 336-37 (citing Tr. 736, 902, 908, 912, 917, 922, 926-27, 932, 937, 943, 953, 962-63, 895).  However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective testing and physical examinations, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47; *Fair*, 885 F.2d at 601.  As discussed in detail above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were legally insufficient.  Thus, because lack of corroboration by objective evidence cannot stand alone as a basis for a rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

### C. Step Five

Plaintiff contends the ALJ erred at step five by failing to identify a significant number of jobs in the national economy that Plaintiff can perform.  ECF No. 12 at 16-19.  However, the Court has already determined that the ALJ erred in weighing and considering the medical evidence and Plaintiff's symptom claims, which calls into question the validity of the ALJ's RFC, hypothetical to the vocational expert, and step five findings.  Moreover, as indicated below, the Court finds that the ALJ's errors in considering the medical opinion evidence and

ORDER ~ 23

Plaintiff's symptom claims warrants remand for immediate payment of benefits;

thus, it is unnecessary for the Court to consider Plaintiff's alleged errors at step

five.

**D. Remedy**

Because the ALJ committed multiple errors, the Court must determine

whether the matter should be remanded for further proceedings or whether an

award of benefits is appropriate.

Generally, when the Court reverses an ALJ's decision, "the proper course,

except in rare circumstances, is to remand to the agency for additional

investigation or explanation."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

2004) (citations omitted).  However, in a number of Social Security cases, the

Ninth Circuit has "stated or implied that it would be an abuse of discretion for a

district court not to remand for an award of benefits" when three conditions are

met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule,

where (1) the record has been fully developed and further administrative

proceedings would serve no useful purpose; (2) the ALJ has failed to provide

legally sufficient reasons for rejecting evidence, whether claimant testimony or

medical opinion; and (3) if the improperly discredited evidence were credited as

true, the ALJ would be required to find the claimant disabled on remand, we

remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir.

2017).  Even where the three prongs have been satisfied, this Court will not

remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court finds that each of these credit-as-true factors is satisfied and that remand for the calculation and award of benefits is warranted. First, the record has been fully developed. Over the course of the record, Plaintiff has had two surgeries, numerous appointments and treatments, and at least five treating or examining medical providers have offered opinions. This matter has previously been remanded three times and there is testimony from four hearing transcripts. The second prong is satisfied because, as discussed *supra*, the ALJ erred in evaluating the evidence and rejecting Plaintiff's testimony, and in evaluating medical opinions and weighing the opinion evidence. The third prong of the credit-as-true rule is satisfied because the vocational expert was asked a hypothetical question about the ability of an individual with limitations described by Dr. Harveson, and the vocational expert testified that those limitations would be incompatible with competitive work. Tr. 379-80, 424.

The credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Plaintiff's application has been pending for nearly thirteen years, has been reviewed by an ALJ four times and the Appeals Council twice, and was remanded with little benefit because the

ORDER ~ 25

ALJ erred in evaluating the same medical opinion evidence in two previous decisions.  Further proceedings would appear to serve no useful purpose.  *See Hill*, 698 F.3d at 1162 (noting a Court may exercise its discretion to remand a case for an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.") (internal citations and quotations omitted).  In this case, the record does not raise "serious doubt" that Plaintiff's physical impairments preclude significant work activity.

The Court therefore reverses and remands to the ALJ for the calculation and award of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is DENIED.

3. This case is **REVERSED** and **REMANDED** for immediate calculation and award of benefits consistent with the findings of this Court.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** November 20, 2020.

ORDER ~ 26

_s/ Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge